IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE DISTRICT OF SOUTH CAROLINA
ANDERSON/GREENWOOD DIVISION

| | | |
|---|---|---|
| James W. Plumb, | ) | Civil Action No. 8:10-cv-03090-RBH-JDA |
| Plaintiff, | ) | |
| | ) | **REPORT AND RECOMMENDATION** |
| | ) | **OF MAGISTRATE JUDGE** |
| vs. | ) | |
| | ) | |
| Michael J. Astrue, | ) | |
| Commissioner of Social Security, | ) | |
| | ) | |
| Defendant. | ) | |

This matter is before the Court for a Report and Recommendation pursuant to Local Civil Rule 73.02(B)(2)(a), D.S.C., and Title 28, United States Code, Section 636(b)(1)(B).[1] Plaintiff brought this action pursuant to 42 U.S.C. § 405(g) to obtain judicial review of a final decision of the Commissioner of Social Security ("the Commissioner"), denying Plaintiff's claim for disability insurance benefits ("DIB"). For the reasons set forth below, it is recommended that the decision of the Commissioner be affirmed and Plaintiff's motion to admit additional evidence [Doc. 15] be denied.

---

[1] A Report and Recommendation is being filed in this case, in which one or both parties declined to consent to disposition by a magistrate judge.

## PROCEDURAL HISTORY

In January 2005, Plaintiff protectively filed an application for DIB, alleging an onset of disability date of September 20, 2004.[2]  [*See* R. 40, 87–108.[3]]  The claim was denied initially on May 3, 2005 [R. 25–26, 78–79] and on reconsideration by the Social Security Administration ("the Administration") on July 1, 2005 [R. 22–23, 73–75].  On July 26, 2005, Plaintiff requested a hearing before an administrative law judge ("ALJ") [R. 71], and on March 2, 2006, ALJ Richard L. Vogel conducted a de novo hearing on Plaintiff's claims [R. 459–75].

The ALJ issued a decision on October 23, 2006, finding Plaintiff not disabled under §§ 216(i) and 223(d) of the Social Security Act ("the Act").  [R. 40–50.]  Plaintiff requested Appeals Council review of the ALJ's decision [R. 83], and on July 25, 2008, the Appeals Council issued an order remanding the case back to the ALJ.  [R. 51–53.]  The Appeals Council could not locate the record or redevelop the evidence and, therefore, could not determine whether the ALJ's decision was supported by substantial evidence.  [R. 52.]  Consequently, the Appeals Council determined Plaintiff "should have the opportunity for a new hearing and decision on the issues raised by his application" and remanded the case to the ALJ for a new hearing.  [*Id.*]

---

[2] Plaintiff previously filed applications for DIB and supplemental security income on April 22, 2003, alleging an onset of disability date of January 1, 1999.  [R. 31.]  Plaintiff's applications were denied initially and on reconsideration, and on September 19, 2004, an administrative law judge ("ALJ") issued a decision finding Plaintiff not entitled to disability benefits and not eligible for supplemental security income.  [R. 31–36.]  There is no indication in the record that Plaintiff requested Appeals Council review of this decision; hence, the ALJ's decision became the Commissioner's final decision on Plaintiff's 2003 applications.  *See* 20 C.F.R. § 404.955.

[3] A copy of Plaintiff's application was not included in the transcript; therefore, the Court references the ALJ's first decision on Plaintiff's 2005 application and the DIB Review Sheets prepared on August 20, 2005 [R. 87–95] and January 5, 2005 [R. 96–108].

On January 20, 2009, ALJ Vogel conducted a second hearing on Plaintiff's claims. [R. 476–90.]  On November 20, 2009, the ALJ issued his decision, again finding Plaintiff not disabled under §§ 216(i) and 223(d) of the Act.  [R. 13–21.]  The ALJ found Plaintiff had the following severe impairments: chronic obstructive pulmonary disease with a history of lung cancer and status post lobectomy; degenerative disc disease of the cervical spine; and degenerative joint disease of the right shoulder.  [R. 15, Finding 3.]  The ALJ considered Plaintiff's impairments of rheumatoid arthritis and vision problems but found they were not severe impairments because they either were not supported by objective signs, symptoms, or laboratory findings or no more than minimally affected Plaintiff's ability to perform work-related activity.  [R. 16.]  The ALJ also noted Plaintiff had not been medically diagnosed with rheumatoid arthritis or a visual condition and treatment notes failed to indicate any abnormal laboratory findings or related findings upon examination. [*Id.*]  Then, the ALJ considered Listings 1.00 and 3.00 and determined Plaintiff did not have an impairment or combination of impairments that met or medically equaled one of the impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1.  [*Id.*, Finding 4.]

Next, the ALJ found Plaintiff had the residual functional capacity to perform a significant range of light work.  [*Id.*, Finding 5.]  Specifically, the ALJ found Plaintiff was able to lift and carry up to twenty pounds occasionally and ten pounds frequently and stand, walk, and sit for six hours in an eight-hour day but could not climb, crawl, or perform work requiring concentrated exposure to lung irritants and could no more than occasionally crouch, stoop, or perform overhead lifting.  [*Id.*]  Finally, the ALJ determined Plaintiff was capable of performing his past relevant work as a liquor store owner/operator.  [R. 20, Finding 6.]

3

Plaintiff requested Appeals Council review of the ALJ's decision [R. 457], but on October 26, 2010, the Appeals Council declined review [R. 6–9]. Plaintiff filed this action for judicial review on December 3, 2010. [Doc. 1.]

## THE PARTIES' POSITIONS

Plaintiff has moved to admit additional evidence because he alleges the additional evidence, which did not exist at the time of the hearing before the ALJ, is material and relevant as it demonstrates Plaintiff's cancer was not completely cured by the lobectomy. [Doc. 15-1.] Additionally, Plaintiff requests the Court review the record before it and, upon review, reverse the ALJ's decision and determine Plaintiff is entitled to disability benefits under the Act. [Doc. 1 at 2 ¶ 2.] In support of his request for relief, Plaintiff contends the ALJ made the following errors:

(1)     in finding Plaintiff could perform his past relevant work as a liquor store owner/operator, the ALJ misquoted the vocational expert's ("VE's") testimony and failed to follow Social Security Rulings ("SSRs") 82-61 and 82-62 [Doc. 11 at 2–5; Doc. 13 at 1–2];

(2)     in weighing the evidence, the ALJ failed to explain why he rejected the opinion of Plaintiff's treating physician, Dr. Rathbun [Doc. 11 at 5–15; Doc. 13 at 2–9];

(3)     in assessing Plaintiff's residual functional capacity ("RFC"), the ALJ failed to apply mandatory analytical tests in rejecting a prior RFC finding and failed to comply with SSR 96-8p [Doc. 11 at 15–19; Doc. 13 at 9–11]; and

(4)     in evaluating Plaintiff's symptoms, the ALJ (a) failed to state which of Plaintiff's symptoms could reasonably be caused by his medically determinable impairments and (b) improperly rejected Plaintiff's testimony [Doc. 11 at 19–22; Doc. 13 at 11–13].

In his response in opposition to Plaintiff's motion to admit additional evidence, the Commissioner contends Plaintiff has failed to request a remand pursuant to sentence six

4

of 42 U.S.C. § 405(g) and has failed to meet the statutory requirements for a sentence six remand. [Doc. 16 at 1.] Specifically, the Commissioner argues the additional evidence is neither material nor relevant to the time period on or before the date of the ALJ's decision. [*Id.* at 2–3.] Moreover, for the following reasons, the Commissioner contends the ALJ's decision is supported by substantial evidence:

(1)    the ALJ reasonably determined Plaintiff could perform his past relevant work [Doc. 12 at 7–9];

(2)    the ALJ reasonably determined Dr. Rathbun's opinions were not entitled to controlling weight [*id.* at 9–12];

(3)    the ALJ reasonably determined Plaintiff's RFC [*id.* at 12–14]; and

(4)    the ALJ reasonably assessed Plaintiff's credibility [*id.* at 14–15].

## STANDARD OF REVIEW

The Commissioner's findings of fact are conclusive if supported by substantial evidence. 42 U.S.C. § 405(g). Substantial evidence is more than a scintilla—i.e., the evidence must do more than merely create a suspicion of the existence of a fact and must include such relevant evidence as a reasonable person would accept as adequate to support the conclusion. *See Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)); *Laws v. Celebrezze*, 368 F.2d 640, 642 (4th Cir. 1966) (citing *Woolridge v. Celebrezze*, 214 F. Supp. 686, 687 (S.D.W. Va. 1963))("Substantial evidence, it has been held, is evidence which a reasoning mind would accept as sufficient to support a particular conclusion. It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance. If there is

evidence to justify a refusal to direct a verdict were the case before a jury, then there is 'substantial evidence.'").

Where conflicting evidence "allows reasonable minds to differ as to whether a claimant is disabled, the responsibility for that decision falls on the [Commissioner] (or the [Commissioner's] designate, the ALJ)," not on the reviewing court.  *Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 1996); *see also  Edwards v. Sullivan*, 937 F.2d 580, 584 n.3 (11th Cir. 1991) (stating that where the Commissioner's decision is supported by substantial evidence, the court will affirm, even if the reviewer would have reached a contrary result as finder of fact and even if the reviewer finds that the evidence preponderates against the Commissioner's decision).  Thus, it is not within the province of a reviewing court to determine the weight of the evidence, nor is it the court's function to substitute its judgment for that of the Commissioner so long as the decision is supported by substantial evidence. *Laws*, 368 F.2d at 642; *Snyder v. Ribicoff*, 307 F.2d 518, 520 (4th Cir. 1962).

The reviewing court will reverse the Commissioner's decision on plenary review, however, if the decision applies incorrect law or fails to provide the court with sufficient reasoning to determine that the Commissioner properly applied the law. *Myers v. Califano,* 611 F.2d 980, 982 (4th Cir. 1980); *see also Keeton v. Dep't of Health & Human Servs.*, 21 F.3d 1064, 1066 (11th Cir. 1994).  Where the Commissioner's decision "is in clear disregard of the overwhelming weight of the evidence, Congress has empowered the courts to modify or reverse the [Commissioner's] decision 'with or without remanding the cause for a rehearing.'"  *Vitek  v. Finch*, 438 F.2d 1157, 1158 (4th Cir. 1971) (quoting 42 U.S.C. § 405(g)).  Remand is unnecessary where "the record does not contain substantial

evidence to support a decision denying coverage under the correct legal standard and when reopening the record for more evidence would serve no purpose." *Breeden v. Weinberger*, 493 F.2d 1002, 1012 (4th Cir. 1974).

The court may remand a case to the Commissioner for a rehearing under sentence four or sentence six of 42 U.S.C. § 405(g). *Sargent v. Sullivan*, 941 F.2d 1207 (4th Cir. 1991) (unpublished table decision). To remand under sentence four, the reviewing court must find either that the Commissioner's decision is not supported by substantial evidence or that the Commissioner incorrectly applied the law relevant to the disability claim. *See, e.g.*, *Jackson v. Chater*, 99 F.3d 1086, 1090–91 (11th Cir. 1996) (holding remand was appropriate where the ALJ failed to develop a full and fair record of the claimant's residual functional capacity); *Brehem v. Harris*, 621 F.2d 688, 690 (5th Cir. 1980) (holding remand was appropriate where record was insufficient to affirm but was also insufficient for court to find the claimant disabled). Where the court cannot discern the basis for the Commissioner's decision, a remand under sentence four may be appropriate to allow the Commissioner to explain the basis for the decision. *See Smith v. Heckler*, 782 F.2d 1176, 1181–82 (4th Cir. 1986) (remanding case where decision of ALJ contained "a gap in its reasoning" because ALJ did not say he was discounting testimony or why); *Gordon v. Schweiker*, 725 F.2d 231, 235 (4th Cir. 1984) (remanding case where neither the ALJ nor the Appeals Council indicated the weight given to relevant evidence). On remand under sentence four, the ALJ should review the case on a complete record, including any new material evidence. *See Smith*, 782 F.2d at 1182 ("The [Commissioner] and the claimant may produce further evidence on remand."). After a remand under sentence four, the court

7

enters a final and immediately appealable judgment and then loses jurisdiction. *Sargent*, 941 F.2d 1207 (citing *Melkonyan v. Sullivan*, 501 U.S. 89, 102 (1991)).

In contrast, sentence six provides:

> The court may . . . at any time order additional evidence to be taken before the Commissioner of Social Security, but only upon a showing that there is new evidence which is material and that there is good cause for the failure to incorporate such evidence into the record in a prior proceeding . . . .

42 U.S.C. § 405(g). A reviewing court may remand a case to the Commissioner on the basis of new evidence only if four prerequisites are met: (1) the evidence is relevant to the determination of disability at the time the application was first filed; (2) the evidence is material to the extent that the Commissioner's decision might reasonably have been different had the new evidence been before him; (3) there is good cause for the claimant's failure to submit the evidence when the claim was before the Commissioner; and (4) the claimant made at least a general showing of the nature of the new evidence to the reviewing court. *Borders v. Heckler*, 777 F.2d 954, 955 (4th Cir. 1985) (citing 42 U.S.C. § 405(g); *Mitchell v. Schweiker*, 699 F.2d 185, 188 (4th Cir. 1983); *Sims v. Harris*, 631 F.2d 26, 28 (4th Cir. 1980); *King v. Califano*, 599 F.2d 597, 599 (4th Cir. 1979)), *superseded by amendment to statute*, 42 U.S.C. § 405(g), *as recognized in Wilkins v. Sec'y, Dep't of Health & Human Servs.*, 925 F.2d 769, 774 (4th Cir. 1991).[4] With remand under sentence

---

[4]Though the court in *Wilkins* indicated in a parenthetical that the four-part test set forth in *Borders* had been superseded by an amendment to 42 U.S.C. § 405(g), courts in the Fourth Circuit have continued to cite the requirements outlined in *Borders* when evaluating a claim for remand based on new evidence. *See, e.g.*, *Ashton v. Astrue*, No. 6:10-cv-152, 2010 WL 5478646, at *8 (D.S.C. Nov. 23, 2010); *Washington v. Comm'r of Soc. Sec.*, No. 2:08-cv-93, 2009 WL 86737, at *5 (E.D. Va. Jan. 13, 2009); *Brock v. Sec'y of Health & Human Servs.*, 807 F. Supp. 1248, 1250 n.3 (S.D.W. Va. 1992). Further, the Supreme Court of the United States has not suggested *Borders*' construction of § 405(g) is incorrect. *See Sullivan v. Finkelstein*, 496 U.S. 617, 626 n.6 (1990). Accordingly, the Court will apply the more stringent *Borders* inquiry.

six, the parties must return to the court after remand to file modified findings of fact. *Melkonyan*, 501 U.S. at 98. The reviewing court retains jurisdiction pending remand and does not enter a final judgment until after the completion of remand proceedings. *See Allen v. Chater*, 67 F.3d 293 (4th Cir. 1995) (unpublished table decision) (holding that an order remanding a claim for Social Security benefits pursuant to sentence six of 42 U.S.C. § 405(g) is not a final order).

## APPLICABLE LAW

The Act provides that disability benefits shall be available to those persons insured for benefits, who are not of retirement age, who properly apply, and who are under a disability. 42 U.S.C. § 423(a). "Disability" is defined as:

> the inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 consecutive months.

*Id.* § 423(d)(1)(A).

## I.    The Five Step Evaluation

To facilitate uniform and efficient processing of disability claims, federal regulations have reduced the statutory definition of disability to a series of five sequential questions. *See, e.g.*, *Heckler v. Campbell*, 461 U.S. 458, 461 n.2 (1983) (noting a "need for efficiency" in considering disability claims). The ALJ must consider whether (1) the claimant is engaged in substantial gainful activity; (2) the claimant has a severe impairment; (3) the impairment meets or equals an impairment included in the Administration's Official Listings of Impairments found at 20 C.F.R. Pt. 404, Subpt. P, App. 1; (4) the impairment prevents

9

the claimant from performing past relevant work; and (5) the impairment prevents the claimant from having substantial gainful employment. 20 C.F.R. § 404.1520. Through the fourth step, the burden of production and proof is on the claimant. *Grant v. Schweiker*, 699 F.2d 189, 191 (4th Cir. 1983). The claimant must prove disability on or before the last day of her insured status to receive disability benefits. *Everett v. Sec'y of Health, Educ. & Welfare*, 412 F.2d 842, 843 (4th Cir. 1969). If the inquiry reaches step five, the burden shifts to the Commissioner to produce evidence that other jobs exist in the national economy that the claimant can perform, considering the claimant's age, education, and work experience. *Grant*, 699 F.2d at 191. If at any step of the evaluation the ALJ can find an individual is disabled or not disabled, further inquiry is unnecessary. 20 C.F.R. § 404.1520(a); *Hall v. Harris*, 658 F.2d 260, 264 (4th Cir. 1981).

### A.     *Substantial Gainful Activity*

"Substantial gainful activity" must be both substantial—involves doing significant physical or mental activities, 20 C.F.R. § 404.1572(a)—and gainful—done for pay or profit, whether or not a profit is realized, *id.* § 404.1572(b). If an individual has earnings from employment or self-employment above a specific level set out in the regulations, he is generally presumed to be able to engage in substantial gainful activity. *Id.* §§ 404.1574–.1575.

### B.     *Severe Impairment*

An impairment is "severe" if it significantly limits an individual's ability to perform basic work activities. *See id.* § 404.1521. When determining whether a claimant's physical

10

and mental impairments are sufficiently severe, the ALJ must consider the combined effect of all of the claimant's impairments. 42 U.S.C. § 423(d)(2)(B). The ALJ must evaluate a disability claimant as a whole person and not in the abstract, having several hypothetical and isolated illnesses. *Walker v. Bowen*, 889 F.2d 47, 49–50 (4th Cir. 1989) (stating that, when evaluating the effect of a number of impairments on a disability claimant, "the [Commissioner] must consider the combined effect of a claimant's impairments and not fragmentize them"). Accordingly, the ALJ must make specific and well-articulated findings as to the effect of a combination of impairments when determining whether an individual is disabled. *Id.* at 50 ("As a corollary to this rule, the ALJ must adequately explain his or her evaluation of the combined effects of the impairments."). If the ALJ finds a combination of impairments to be severe, "the combined impact of the impairments shall be considered throughout the disability determination process." 42 U.S.C. § 423(d)(2)(B).

### C.    *Meets or Equals an Impairment Listed in the Listings of Impairments*

If a claimant's impairment or combination of impairments meets or medically equals the criteria of a listing found at 20 C.F.R. Pt. 404, Subpt. P, App.1 and meets the duration requirement found at 20 C.F.R. § 404.1509, the ALJ will find the claimant disabled without considering the claimant's age, education, and work experience. 20 C.F.R. § 404.1520(d).

### D.    *Past Relevant Work*

The assessment of a claimant's ability to perform past relevant work "reflect[s] the statute's focus on the functional capacity retained by the claimant." *Pass v. Chater*, 65 F.3d 1200, 1204 (4th Cir. 1995). At this step of the evaluation, the ALJ compares the

11

claimant's residual functional capacity[5] with the physical and mental demands of the kind of work he has done in the past to determine whether the claimant has the residual functional capacity to do his past work.  20 C.F.R. § 404.1560(b).

### E.    *Other Work*

As previously stated, once the ALJ finds that a claimant cannot return to her prior work, the burden of proof shifts to the Commissioner to establish that the claimant could perform other work that exists in the national economy.  *See Hunter v. Sullivan*, 993 F.2d 31, 35 (4th Cir. 1992); 20 C.F.R. § 404.1520(f)–(g).    To meet this burden, the Commissioner may sometimes rely exclusively on the Medical-Vocational Guidelines (the "grids").    Exclusive reliance on the "grids" is appropriate where the claimant suffers primarily from an exertional impairment, without significant nonexertional factors.[6]  20 C.F.R. Pt. 404, Subpt. P, App. 2, § 200.00(e); *see also Gory v. Schweiker*, 712 F.2d 929, 930–31 (4th Cir. 1983) (stating that exclusive reliance on the grids is appropriate in cases involving exertional limitations).    When a claimant suffers from both exertional and nonexertional limitations, the grids may serve only as guidelines.  *Gory*, 712 F.2d at 931. In such a case, the Commissioner must use a vocational expert to establish the claimant's ability to perform other work.  20 C.F.R. § 404.1569a; *see Walker*, 889 F.2d at 49–50

---

[5]Residual functional capacity is "the most [a claimant] can do despite [his] limitations."  20 C.F.R. § 404.1545(e)

[6]An exertional limitation is one that affects the claimant's ability to meet the strength requirements of jobs. 20 C.F.R. § 404.1569a.  A nonexertional limitation is one that affects the ability to meet the demands of the job other than the strength demands.  *Id.*  Examples of nonexertional limitations include but are not limited to difficulty functioning because of being nervous, anxious, or depressed; difficulty maintaining attention or concentrating; difficulty understanding or remembering detailed instructions; difficulty seeing or hearing.  *Id.*

("Because we have found that the grids cannot be relied upon to show conclusively that claimant is not disabled, when the case is remanded it will be incumbent upon the [Commissioner] to prove by expert vocational testimony that despite the combination of exertional and nonexertional impairments, the claimant retains the ability to perform specific jobs which exist in the national economy.").  The purpose of using a vocational expert is "to assist the ALJ in determining whether there is work available in the national economy which this particular claimant can perform."  *Walker*, 889 F.2d at 50.  For the vocational expert's testimony to be relevant, "it must be based upon a consideration of all other evidence in the record, . . . and it must be in response to proper hypothetical questions which fairly set out all of claimant's impairments."  *Id.* (citations omitted).

## II.     Developing the Record

The ALJ has a duty to fully and fairly develop the record.  *See Cook v. Heckler*, 783 F.2d 1168, 1173 (4th Cir. 1986).  The ALJ is required to inquire fully into each relevant issue.  *Snyder*, 307 F.2d at 520.  The performance of this duty is particularly important when a claimant appears without counsel.  *Marsh v. Harris*, 632 F.2d 296, 299 (4th Cir. 1980).  In such circumstances, "the ALJ should scrupulously and conscientiously probe into, inquire of, and explore for all the relevant facts, . . . being especially diligent in ensuring that favorable as well as unfavorable facts and circumstances are elicited."  *Id.* (internal quotations and citations omitted).

### III.    Treating Physicians

The opinion of a claimant's treating physician must "be given great weight and may be disregarded only if there is persuasive contradictory evidence" in the record. *Coffman v. Bowen*, 829 F.2d 514, 517 (4th Cir. 1987) (citing *Foster v. Heckler*, 780 F.2d 1125, 1130 (4th Cir. 1986) (holding that a treating physician's testimony is entitled to great weight because it reflects an expert judgment based on a continuing observation of the patient's condition over a prolonged period of time); *Mitchell v. Schweiker*, 699 F.2d 185, 187 (4th Cir. 1983)).  If a treating physician's opinion on the nature and severity of a claimant's impairments is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence" in the record, the ALJ must give it controlling weight.  20 C.F.R. § 404.1527(d)(2); *see Mastro v. Apfel*, 270 F.3d 171, 178 (4th Cir. 2001).  The ALJ may discount a treating physician's opinion if it is unsupported or inconsistent with other evidence.  *Craig*, 76 F.3d at 590.  Similarly, where a treating physician has merely made conclusory statements, the ALJ may afford the opinion such weight as is supported by clinical or laboratory findings and other consistent evidence of a claimant's impairments.  *See id.* (holding there was sufficient evidence for the ALJ to reject the treating physician's conclusory opinion where the record contained contradictory evidence).

When a treating physician's opinion does not warrant controlling weight, the ALJ must nevertheless assign a weight to the medical opinion based on the 1) length of the treatment relationship and the frequency of examination; 2) nature and extent of the

14

treatment relationship; 3) supportability of the opinion; 4) consistency of the opinion with the record a whole; 5) specialization of the physician; and 6) other factors which tend to support or contradict the opinion.  20 C.F.R. § 404.1527(d).  In any instance, a treating physician's opinion is generally entitled to more weight than a consulting physician's opinion.  *See  Mitchell*, 699 F.2d at 187 (stating that treating physician's opinion must be accorded great weight because "it reflects an expert judgment based on a continuing observation of the patient's condition for a prolonged period of time"); 20 C.F.R. § 404.1527(d)(2).  An ALJ determination coming down on the side of a non-examining, non-treating physician's opinion can stand only if the medical testimony of examining and treating physicians goes both ways.  *Smith v. Schweiker*, 795 F.2d 343, 346 (4th Cir.1986).

The ALJ is required to review all of the medical findings and other evidence that support a medical source's statement that a claimant is disabled.  20 C.F.R. § 404.1527(e).  However, the ALJ is responsible for making the ultimate determination about whether a claimant meets the statutory definition of disability.  *Id.*

**IV.    Medical Tests and Examinations**

The ALJ is required to order additional medical tests and exams only when a claimant's medical sources do not give sufficient medical evidence about an impairment to determine whether the claimant is disabled.  20 C.F.R. § 404.1517; *see also Conley v. Bowen*, 781 F.2d 143, 146 (8th Cir. 1986).  The regulations are clear: a consultative examination is not required when there is sufficient medical evidence to make a determination on a claimant's disability.  20 C.F.R. § 404.1517.  Under the regulations,

15

however, the ALJ may determine that a consultative examination or other medical tests are necessary. *Id.*

## V.     Pain

Congress has determined that a claimant will not be considered disabled unless he furnishes medical and other evidence (e.g., medical signs and laboratory findings) showing the existence of a medical impairment that could reasonably be expected to produce the pain or symptoms alleged.  42 U.S.C. § 423(d)(5)(A).  In evaluating claims of disabling pain, the ALJ must proceed in a two-part analysis. *Morgan v. Barnhart,* 142 F. App'x 716, 723 (4th Cir. 2005) (unpublished opinion).  First, "the ALJ must determine whether the claimant has produced medical evidence of a 'medically determinable impairment which could reasonably be expected to produce . . . the actual pain, in the amount and degree, alleged by the claimant.'" *Id.* (quoting *Craig*, 76 F.3d at 594).  Second, "if, and only if, the ALJ finds that the claimant has produced such evidence, the ALJ must then determine, as a matter of fact, whether the claimant's underlying impairment *actually* causes her alleged pain." *Id.* (emphasis in original) (citing *Craig*, 76 F.3d at 595).

Under the Fourth Circuit's "pain rule," it is well established that "subjective complaints of pain and physical discomfort can give rise to a finding of total disability, even when those complaints [a]re not supported fully by objective observable signs." *Coffman*, 829 F.2d at 518.  The ALJ must consider all of a claimant's statements about his symptoms, including pain, and determine the extent to which the symptoms can reasonably be accepted as consistent with the objective medical evidence.  20 C.F.R. § 404.1528.

16

Indeed, the Fourth Circuit has rejected a rule which would require the claimant to demonstrate objective evidence of the pain itself, *Jenkins v. Sullivan*, 906 F.2d 107, 108 (4th Cir. 1990), and ordered the Commissioner to promulgate and distribute to all administrative law judges within the circuit a policy stating Fourth Circuit law on the subject of pain as a disabling condition, *Hyatt v. Sullivan*, 899 F.2d 329, 336–37 (4th Cir. 1990). The Commissioner thereafter issued the following "Policy Interpretation Ruling":

> This Ruling supersedes, only in states within the Fourth Circuit (North Carolina, South Carolina, Maryland, Virginia and West Virginia), Social Security Ruling (SSR) 88-13, Titles II and XVI: Evaluation of Pain and Other Symptoms:
>
> ...
>
> **FOURTH CIRCUIT STANDARD:** Once an underlying physical or [m]ental impairment that could reasonably be expected to cause pain is shown by medically acceptable objective evidence, such as clinical or laboratory diagnostic techniques, the adjudicator must evaluate the disabling effects of a disability claimant's pain, even though its intensity or severity is shown only by subjective evidence. If an underlying impairment capable of causing pain is shown, subjective evidence of the pain, its intensity or degree can, by itself, support a finding of disability. Objective medical evidence of pain, its intensity or degree (i.e., manifestations of the functional effects of pain such as deteriorating nerve or muscle tissue, muscle spasm, or sensory or motor disruption), if available, should be obtained and considered. Because pain is not readily susceptible of objective proof, however, the absence of objective medical evidence of the intensity, severity, degree or functional effect of pain is not determinative.

SSR 90-1p, 55 Fed. Reg. 31,898-02, at 31,899 (Aug. 6, 1990). SSR 90-1p has since been superseded by SSR 96-7p, which is consistent with SSR 90-1p. *See* SSR 96-7p, 61 Fed. Reg. 34,483-01 (July 2, 1996). SSR 96-7p provides, "If an individual's statements about pain or other symptoms are not substantiated by the objective medical evidence, the

17

adjudicator must consider all of the evidence in the case record, including any statements by the individual and other persons concerning the individual's symptoms." *Id.* at 34,485; *see also* 20 C.F.R. § 404.1529(c)(1)–(c)(2) (outlining evaluation of pain).

## VI.     Credibility

The ALJ must make a credibility determination based upon all the evidence in the record.  Where an ALJ decides not to credit a claimant's testimony about pain, the ALJ must articulate specific and adequate reasons for doing so, or the record must be obvious as to the credibility finding.  *Hammond v. Heckler*, 765 F.2d 424, 426 (4th Cir. 1985). Although credibility determinations are generally left to the ALJ's discretion, such determinations should not be sustained if they are based on improper criteria.  *Breeden*, 493 F.2d at 1010 ("We recognize that the administrative law judge has the unique advantage of having heard the testimony firsthand, and ordinarily we may not disturb credibility findings that are based on a witness's demeanor.  But administrative findings based on oral testimony are not sacrosanct, and if it appears that credibility determinations are based on improper or irrational criteria they cannot be sustained.").

## APPLICATION AND ANALYSIS

**Motion to Admit Additional Evidence**

Plaintiff seeks to admit additional evidence that did not exist at the time of the hearing before the ALJ. [Doc. 15.] Specifically, Plaintiff seeks to admit (1) an August 2011 oncology report indicating Plaintiff is a good candidate for definitive radiotherapy for right true vocal cord squamous cell cancer and (2) a report regarding a July 2011 chest CT that states the CT demonstrates pleural thickening that is thought to be a chronic sequelae of

18

Plaintiff's prior lobectomy. [Doc. 15-1.] Plaintiff contends the additional evidence is relevant and material because "the ALJ essentially denied the case on the grounds that [Plaintiff's] prior lobectomy resulted in no sequelae from his lung cancer," i.e., the evidence demonstrates Plaintiff's cancer was not completely cured by the lobectomy. [*Id.*] The Court construes Plaintiff's motion as a motion to remand the case pursuant to sentence six of 42 U.S.C. § 405(g), but the Court declines to remand the case pursuant to sentence six because the Court disagrees the additional evidence is material.

The only method by which a reviewing court may consider additional evidence is in the context of a request for remand under sentence six of 42 U.S.C. § 405(g). Sentence six provides that, if there is "new evidence which is material and that there is good cause for the failure to incorporate such evidence into the record in a prior proceeding," a court may remand the case to the Administration for consideration of the new evidence. 42 U.S.C. § 405(g). As previously stated, a court may remand a case based on new evidence only if four prerequisites are met: (1) the evidence is relevant to the determination of disability at the time the application was first filed; (2) the evidence is material to the extent that the Commissioner's decision might reasonably have been different had the new evidence been before him; (3) there is good cause for the claimant's failure to submit the evidence when the claim was before the Commissioner; and (4) the claimant made at least a general showing of the nature of the new evidence to the reviewing court. *Borders*, 777 F.2d at 955 (citation omitted).

Here, Plaintiff has met the third and fourth *Borders* requirements—Plaintiff had good cause for failing to submit the evidence to the Commissioner because it did not exist until after Plaintiff had filed this action for judicial review, and Plaintiff has made a showing of

19

the nature of the new evidence by attaching the evidence to his motion. However, assuming without deciding the evidence is relevant to the determination of disability for the time period considered by the ALJ, Plaintiff has failed to demonstrate the additional evidence is material, i.e., that the ALJ's decision might reasonably have been different had the new evidence been before him. While the ALJ did note that, because treatment notes failed to indicate any recurrence of Plaintiff's lung cancer, the ALJ did not consider whether Plaintiff's impairments met or equaled a listing for lung cancer, Plaintiff has failed to demonstrate the additional evidence supports a finding that Plaintiff's impairments met or equaled a listing. Further, Plaintiff has failed to demonstrate the additional evidence contradicts the RFC assessed by the ALJ. Finally, Plaintiff has failed to demonstrate the additional evidence supports a finding that Plaintiff was incapable of performing his past relevant work. Accordingly, the Court concludes Plaintiff has failed to demonstrate the ALJ's decision might reasonably have been different if the additional evidence had been before him and, therefore, remand pursuant to sentence six is unwarranted.

**Past Relevant Work Determination**

Plaintiff contends that, in finding Plaintiff could perform his past relevant work as a liquor store owner/operator, the ALJ misquoted the VE's testimony and failed to follow SSRs 82-61 and 82-62. [Doc. 11 at 2–5; Doc. 13 at 1–2.] Specifically, Plaintiff argues the ALJ did not analyze Plaintiff's past relevant work to any degree but simply cited the VE's testimony, inaccurately cited the VE's testimony, violated SSR 82-61 by ignoring one of the *Dictionary of Occupational Titles* ("DOT") codes corresponding to Plaintiff's past relevant work, and violated SSR 82-62 by ignoring the composite nature of Plaintiff's past relevant work. [Doc. 11 at 2–5.] While the Court finds the ALJ could have been more careful with

his choice of words,[7] the Court concludes the ALJ's decision that Plaintiff could perform his past relevant work as a liquor store owner/operator is free of reversible error.

### ALJ's Summary Consistent With VE's Testimony

Plaintiff contends the ALJ misquoted the VE's testimony. At the hearing, the ALJ and the VE engaged in the following colloquy:

> Q    All right. [VE], please assume a hypothetical worker the same age as [Plaintiff], same work history and education, would say in the light exertional capacity with no climbing or crawling, occasional crouching and stooping, no more than occasional overhead reaching, no concentrated exposure to lung irritants and a sit/stand option where he would have the flexibility to change position every hour of an eight-hour workday. Can that individual, in your opinion, [VE], perform the prior work on an owner/operator as you described it?
>
> A    No, Your Honor. I don't believe so.
>
> Q    And what would prevent that?
>
> A    In its purest form, an owner/operator can direct other people to do the heavy physical work, but that job is going to require that someone be on the floor at all times, usually at the cash register, but frequently walking through the store, greeting people, trying to direct them, trying to drum up sales. So you're going to be on your feet pretty consistently throughout the day.
>
> Q    If I eliminated the sit/stand option from the hypothetical as I described it --
>
> A    Right.
>
> Q    -- would the individual then be able to perform that job?

---

[7] The Court has carefully reviewed the ALJ's decision and the applicable law and finds that, while the ALJ's decision complies with the applicable law, the ALJ could have avoided any ambiguity by clearly stating that Plaintiff could perform his prior relevant work as it is generally performed in the national economy but not as Plaintiff performed his particular job.

> A    As described by the DOT?  Yes, not as previously
>       performed.  No.

[R. 488.] As previously stated, the ALJ assessed an RFC consistent with this hypothetical without the sit/stand option.  [*See* R. 16, Finding 5.]  Therefore, the VE testified that, assuming Plaintiff retained the RFC assessed by the ALJ, Plaintiff could perform his past relevant work as a liquor store owner/operator as that job is described in the DOT but not as Plaintiff actually performed it.

In finding Plaintiff could perform his past relevant work as a liquor store owner/operator, the ALJ stated, "[T]he impartial vocational expert testified that based upon [Plaintiff's] residual functional capacity as described above, [Plaintiff] could return to his past relevant work as a liquor store owner/operator."  [R. 20.]  Based on a comparison of this statement, the ALJ's RFC assessment, and the colloquy between the ALJ and the VE at the hearing, the Court concludes the ALJ accurately summarized the VE's testimony. Therefore, the Court determines Plaintiff's argument that the ALJ misquoted the VE is without merit.

### *ALJ's Decision Consistent With SSR 82-61*

Plaintiff contends the ALJ failed to follow the requirements of SSR 82-61.  SSR 82-61 is a Program Policy Statement, and the Policy Statement portion reads,

> Under sections 404.1520(e) and 416.920(e) of the regulations, a claimant will be found to be "not disabled" when it is determined that he or she retains the RFC to perform:
>
> 1. The actual functional demands and job duties of a particular past relevant job; *or*
>
> 2. The functional demands and job duties of the occupation as generally required by employers throughout the national economy.

22

SSR 82-61, 1982 WL 31387, at *2 (1982) (emphasis in original).  The SSR further explains

that the DOT descriptions can be relied upon to define a job as it is usually performed in

the national economy.  *Id.*  Moreover, the SSR states that when a claimant's past relevant

work is a composite job—that is, the job has significant elements of two or more

occupations and no counterpart in the DOT—the claimant's ability is evaluated according

to the facts of the claimant's particular case, and a VE may be utilized to determine how

the particular job is usually performed.  *Id.*

> Here, the ALJ utilized a VE, who described Plaintiff's prior work as follows:

> The prior work was that of a liquor store owner and operator.
> That work really breaks down into two DOT's.  The
> owner/management type of duties would be covered under
> DOT 185.167-046.  That work is skilled with an SVP of seven
> and light.  The physical duties, including the stocking, the
> unloading, putting up cases, would fall under the category of
> liquor store clerk, DOT 299.367-014, semiskilled, SVP of four
> and heavy.  Your honor, the Claimant's testimony today
> indicates that -- he creates the impression that he spent a lot
> of time actually moving stock and dong heavy physical work
> which is somewhat at variance from the job description  that
> was written in the written records, so that's why I split it out that
> way.  There was also employment as a maintenance repairer,
> DOT 899.381-010.  That work is skilled, SVP of seven and
> usually performed at the medium level of exertion.

[R. 487.]  As described above, the VE also testified that assuming Plaintiff retained the

RFC assessed by the ALJ, Plaintiff could perform his past relevant work as a liquor store

owner/operator as that job is described in the DOT but not as Plaintiff actually performed

it.  [R. 488; *see also* R. 132–35 (vocational analyses concluding Plaintiff could perform his

past relevant work as a liquor store owner/operator as that work is generally performed in

the national economy).]  Further, the VE testified Plaintiff would have skills transferrable

to work at the sedentary level with an SVP of no more than seven but that there would be

23

a significant degree of vocational adjustment, i.e, work setting, work procedures, work materials would be significantly different.  [R. 488–89.]  Upon examination by Plaintiff's attorney, the VE indicated limiting the maximum weight Plaintiff could carry to five pounds would restrict the range of sedentary work Plaintiff could perform.  [R. 489.]  In his decision, the ALJ found that, based on his RFC, Plaintiff was able to perform his past relevant work as it is actually and generally performed.  [R. 20.]  The ALJ also noted the VE's opinions were consistent with occupational information provided in the DOT.  [R. 20–21.]

Upon review, the Court concludes the ALJ's decision complies with SSR 82-61.  The ALJ determined Plaintiff was not disabled because he retained the RFC to perform his past relevant work as that work is generally performed in the national economy.  The ALJ assessed the facts of Plaintiff's case and utilized the testimony of a VE to determine how Plaintiff's past relevant work was performed by Plaintiff and is performed in the national economy.  Accordingly, the Court concludes that, contrary to Plaintiff's assertion, the ALJ's decision is consistent with SSR 82-61.

### *ALJ's Decision Consistent With SSR 82-62*

Plaintiff contends the ALJ failed to follow the requirements of SSR 82-62.  SSR 82-62 is a Program Policy Statement, and the Policy Statement portion reads in pertinent part,

> In finding that an individual has the capacity to perform a past relevant job, the determination or decision must contain among the findings the following specific findings of fact:
>
> 1. A finding of fact as to the individual's RFC.
>
> 2. A finding of fact as to the physical and mental demands of the past job/occupation.
>
> 3. A finding of fact that the individual's RFC would permit a return to his or her past job or occupation.

24

SSR 82-62, 1982 WL 31386, at *4 (1982).  In making the required finding of fact as to the physical and mental demands of past work, the ALJ may obtain information from several sources: the claimant, the employer, co-workers, vocational experts or specialists, or other resources.  *See* 20 C.F.R. §§ 404.1560(b)(2), 404.1565(b).  A determination of the claimant's ability to do past relevant work might require, "in some cases, supplementary or corroborative information from other sources such as employers, the *Dictionary of Occupational Titles*, etc., on the requirements of the work as generally performed in the economy."  SSR 82-62, 1982 WL 31386, at *3 (1982).

Here, the ALJ made an adequate finding of fact as to the physical and mental demands of Plaintiff's past job.  The ALJ stated he was relying on the VE's testimony, which, consistent with the DOT, was that a liquor store owner/operator is a light, skilled job with SVP 7.  [R. 20–21.]  Further, as described above, SSR 82-61 allowed the ALJ to determine Plaintiff's ability to perform his past relevant work based on "[t]he functional demands and job duties of the occupation as generally required by employers throughout the national economy."  SSR 82-61, 1982 WL 31387, at *2 (1982).  Consequently, while the ALJ did not make detailed findings regarding the physical and mental demands of Plaintiff's particular past work, the ALJ did make a finding of fact sufficient to compare Plaintiff's RFC to the demands of the job as it is generally performed in the economy, which allowed the ALJ to determine Plaintiff's ability to perform his past relevant work pursuant to SSR 82-61.  *See Greer v. Astrue*, No. 1:10cv240, 2011 WL 5553691, at *3–4 (W.D.N.C. Nov. 15, 2011) (holding the ALJ did not err by failing to follow SSR 82-62's directive to make a finding of fact as to the physical and mental demands of the past job/occupation because the ALJ followed an alternative permitted under SSR 82-61,

25

comparing the claimant's RFC with the demands for the particular job listed in the DOT to determine the claimant could perform the job as it is performed in the national economy). Therefore, the Court concludes that, contrary to Plaintiff's assertion, the ALJ's decision is consistent with the method of analysis detailed in SSRs 82-61 and 82-62.

**Weight Assigned to Dr. Rathbun's Opinion**

Plaintiff contends the ALJ failed to explain why he rejected the opinion of Plaintiff's treating physician, Dr. Rathbun. [Doc. 11 at 5–15; Doc. 13 at 2–9.] Specifically, Plaintiff contends the ALJ was required but failed to consider the factors contained in SSR 96-2p to determine the weight accorded a treating physician's opinion. [Doc. 11 at 7–8.] Further, Plaintiff argues Dr. Rathbun's conclusions are supported by his treatment notes.[8] [*Id.* at 9–11.] Finally, Plaintiff contends the ALJ cherry-picked from the conclusions of Dr. Williams, ignoring Dr. Williams's conclusions with respect to Plaintiff's breathing capacity, which were consistent with Dr. Rathbun's conclusions. [*See id.* at 12–15.] For the reasons explained below, the Court disagrees with Plaintiff and finds the ALJ properly evaluated Dr. Rathbun's opinion.

### *Relevant Medical History*

In 1996, Plaintiff was diagnosed with lung cancer and underwent a right upper lobectomy and radiation treatment. [R. 192–217.] A cervical x-ray in August 2002, as interpreted by John Rathbun, M.D., revealed degenerative changes at C5-7 [R. 175], and a right shoulder x-ray in October 2003 revealed minimal arthritic changes in the glenohumeral joint [R. 172].

---

[8] Plaintiff argues Dr. Rathbun's opinions, according to SSR 83-10, demonstrate Plaintiff was limited to less than sedentary work or disabled. [Doc. 11 at 5–6.]

In August 2003, Fletcher Baker, M.D., reviewed Plaintiff's records and completed a Physical Residual Functional Capacity ("PRFC") Assessment form. [R. 263–70.] Dr. Baker determined Plaintiff could stand about six hours in an eight-hour workday, sit about six hours in an eight-hour workday, occasionally lift twenty pounds, and frequently lift ten pounds. [R. 264.] Dr. Baker opined Plaintiff had postural limitations such that he should only occasionally climb ramps or stairs and never climb ladders, ropes, or scaffolds. [R. 265.] Additionally, Dr. Baker determined Plaintiff had environmental limitations such that he should avoid concentrated exposure to extreme cold and heat, wetness, humidity, and fumes, odors, dusts, gases, poor ventilation, etc. [R. 267.]

In April 2004, Dr. Rathbun completed a Physical Capacities Evaluation ("PCE") form [R. 145–47], opining Plaintiff could occasionally lift twenty pounds and frequently lift ten pounds and sit for four hours, stand for three hours, and walk for one hour during an eight-hour workday [R. 145]. He also determined Plaintiff could use both of his upper and lower extremities for repetitive actions. [*Id.*] Further, Dr. Rathbun opined Plaintiff would never be able to climb, bend, squat, kneel, crawl, use his hands above shoulder level, or twist from side to side. [R. 146.] Additionally, Dr. Rathbun opined Plaintiff should never be exposed to workplace conditions including unprotected heights, moving machinery, extreme temperatures, and dust, fumes, and gases, but could occasionally be exposed to noise and vibration. [*Id.*] Dr. Rathbun determined Plaintiff had pain, nausea, and shortness of breath that would require breaks or rest periods during the day [*id.*], but Dr. Rathbun also opined Plaintiff's pain ranged only in the level from mild to moderately severe and did not indicate Plaintiff experienced severe pain [R. 147]. Finally, Dr. Rathbun

27

indicated all of Plaintiff's medication had known side effects that could affect or limit his abilities. [R. 146.]

In March 2005, Asbury Williams, M.D., performed a consultative examination of Plaintiff at the request of the state disability agency. [R. 136–38.] Plaintiff reported he smoked and was on no medication except Bextra.[9] [R. 136.] Examination revealed Plaintiff was able to stand, walk, bend, and stoop; had mild arthritic changes in the hands and knees with no limitation of motion; showed no evidence of sensory or motor deficits; and showed decreased breath sounds in the right upper thorax with no rales or rhonchi. [R. 137–38.] Dr. Williams noted Plaintiff had an "abnormality related to the respiratory system"—decreased respiratory capacity [R. 137]—and apparently became short of breath on the slightest exertion [R. 138.]

In April 2005, a state agency consultant[10] reviewed Plaintiff's records and completed a PRFC Assessment form. [R. 290–95.] The consultant determined Plaintiff could stand about six hours in an eight-hour workday, sit about six hours in an eight-hour workday, occasionally lift twenty pounds, and frequently lift ten pounds. [R. 291.] The consultant also opined Plaintiff had environmental limitations such that he should avoid concentrated exposure to extreme cold and heat and fumes, odors, dusts, gases, poor ventilation, etc. [R. 294.]

On February 20, 2006, Plaintiff presented to Dr. Rathbun. [R. 159.] The treatment note reflects minimal examination findings. [*Id.*] However, on the same day, Dr. Rathbun

---

[9] The ALJ noted Bextra is a nonsteroidal anti-inflammatory pain medication. [R. 18.] Plaintiff contends "non-steroidal anti-inflammatory drugs such as Bextra are quite strong." [Doc. 11 at 12, 21.]

[10] The Court cannot name the consultant who completed this PRFC assessment because the Court could not locate the signature page for this PRFC assessment form.

completed a PCE form [R. 156–58], indicating Plaintiff could never lift twenty pounds; could occasionally lift ten pounds; could sit, stand, or walk only five to ten minutes without a rest period; could not use either his upper or lower extremities for repetitive actions [R. 156]. Dr. Rathbun also opined Plaintiff's condition caused pain that would affect his ability to concentrate and that Plaintiff's pain ranged from moderately severe to servere.  [R. 157–58.]  Dr. Rathbun indicated none of Plaintiff's medication had known side effects and/or required additional limitations on Plaintiff's activity.  [R. 157.]

In November 2006, Dr. Rathbun noted cervical, lumbar, and left shoulder x-rays revealed moderate degenerative changes in the cervical spine, a normal lumbosacral spine, and a normal left shoulder [R. 177–79], and a pulmonary function test revealed severe chest restriction [R. 180–83].  In May 2007, Plaintiff fractured his left ankle when he had to lay down his motorcycle while riding it.  [R. 300.]  In evaluating Plaintiff's social history and symptoms at that time, Dr. Rathbun noted Plaintiff was "medically retired" but did some contracting work when he was able and was generally able to care for his own activities of daily living.  [*Id.*]

From June 2008 to October 2008, Plaintiff presented to Dr. Rathbun with complaints of shortness of breath and right-sided pain. [R. 230–35.] Treatment notes reflect minimal examination findings and indicate that medication helped relieve Plaintiff's pain.  [*Id.*]  In September 2008, Dr. Rathbun completed a Medical Source Statement of Ability To Do Work-Related Activities (Physical). [R. 185–90.] He opined Plaintiff could occasionally lift up to fifty pounds; occasionally carry up to twenty pounds; sit for a total of six hours, stand for a total of one hour, and walk for a total of one hour in an eight-hour workday; did not need a cane to ambulate; could never reach overhead but could do other reaching,

29

handling, fingering, feeling, and push/pull with both hands; could frequently operate foot controls with either foot; and could never balance but could occasionally climb stairs, ramps, ladders, or scaffolds, stoop, kneel, crouch, and crawl.  [R. 186–88.]  Dr. Rathbun further opined Plaintiff could never tolerate exposure to unprotected heights; moving mechanical parts; humidity and wetness; dust, odors, fumes, and pulmonary irritants; and extreme cold and heat but could occasionally operate a motor vehicle and tolerate vibrations.  [R. 189.]  Finally, Dr. Rathbun opined Plaintiff could not walk a block at a reasonable pace on rough or uneven surfaces but could perform activities like shopping; travel without a companion for assistance; ambulate without using a wheelchair, two canes, or two crutches; use standard public transportation; climb a few steps at a reasonable pace with the use of a single hand rail; prepare a simple meal and feed himself; care for personal hygiene; and sort, handle, and use paper/files.  [R. 190.]

In January 2009, Dr. Rathbun completed a Rheumatology/Arthritis Form.  [R. 219–22.]  Dr. Rathbun opined Plaintiff had mild to moderate continuous pain; was capable of working a low stress job; could sit/stand for ten minutes at a time for less than two hours in an eight hour workday; needed to use a cane to engage in occasional standing/walking; could rarely lift ten pounds; could rarely stoop/bend, crouch, and climb stairs; could never climb ladders; and could frequently twist.  [R. 220–22.]  Although it was a question on the form, Dr. Rathbun failed to identify the clinical findings and laboratory and test results that showed Plaintiff's medical impairments.  [R. 219 (leaving question 6 blank).]

### *ALJ's Analysis of and Weight Assigned to Dr. Rathbun's Opinion*

The ALJ is obligated to evaluate and weigh medical opinions "pursuant to the following non-exclusive list: (1) whether the physician has examined the applicant, (2) the treatment relationship between the physician and the applicant, (3) the supportability of the physician's opinion, (4) the consistency of the opinion with the record, and (5) whether the physician is a specialist." *Johnson v. Barnhart*, 434 F.3d 650, 654 (4th Cir. 2005) (citing 20 C.F.R. § 404.1527).  Courts typically "accord 'greater weight to the testimony of a treating physician' because the treating physician has necessarily examined the applicant and has a treatment relationship with the applicant." *Id.* (quoting *Mastro*, 270 F.3d at 178).  While the ALJ may discount a treating physician's opinion if it is unsupported or inconsistent with other evidence, *Craig*, 76 F.3d at 590, "the ALJ must consider all the record evidence and cannot 'pick and choose' only the evidence that supports his position," *Loza v. Apfel*, 219 F.3d 378, 393 (5th Cir. 2000).  Finally, the ALJ does not have to "give any special significance to the source of an opinion on issues reserved to the Commissioner," such as an opinion that the claimant is disabled, the claimant's impairment or impairments meets or equals a listing, or the claimant has a certain residual functional capacity.  20 C.F.R. § 1527(e).

Here, the ALJ gave Dr. Rathbun's opinions regarding Plaintiff's functional capacity generally limited weight because they were unsupported by the weight of the evidence of record.  [R. 18.]  The ALJ found Plaintiff generally received limited medical attention as a result of his severe impairments and did not require any surgery, physical therapy, or injections following his alleged onset date.  [*Id.*]  Moreover, the ALJ noted findings upon

31

routine examination were generally unremarkable.  [*Id.*]  Further, despite his impairments, the ALJ found Plaintiff retained the ability to perform his activities of daily living, including the ability to ride a motorbike and perform some work activity.  [*Id.*]

More specifically, the ALJ cited medical notes referencing Plaintiff's ability to stand, walk, and move about well.  [R. 19; *see, e.g.*, R. 137–38.]  Moreover, treatment notes indicated that despite his chronic obstructive pulmonary disease, a previous right upper lobe lobectomy, and a shift of mediastinal contents into the right chest, and doctors' instructions to quit, Plaintiff continued to smoke more than a pack of cigarets daily.  [R. 19 (citing Exhibit 7F); *see, e.g.*, R. 136, 180–81, 300.]  The ALJ noted some improvement in Plaintiff's lung condition occurred with treatment as physical exams were generally normal but for some pulmonary findings.  [R. 20; *see, e.g.*, R. 159–62, 173, 232.]

Further, the ALJ found Plaintiff suffered from a severe impairment of degenerative disc disease of the cervical spine but that a consultive examination in March 2005 found Plaintiff's back was within normal limits; Plaintiff was able to stand, walk, and move about well; and Plaintiff had normal strength and sensation.  [R. 20; *see, e.g.*, R. 136–38.]  The ALJ noted Plaintiff did not require significant follow-up medical treatment, physical therapy, injections, or surgery for this condition.  [R. 20.]

Finally, the ALJ found Plaintiff suffered from a severe impairment of degenerative joint disease of the right shoulder, but on consultive examination in March 2005, no right shoulder dysfunction was found.  [*Id.*; *see, e.g.*, R. 136–38.]  The ALJ referenced x-rays of the right shoulder in November 2006, which revealed degenerative changes with a fracture in the glenohumeral fossa.  [R. 20; *see, e.g.*, R. 177–79.]  However, the ALJ noted

Plaintiff did not require any follow-up treatment for this condition, and in September 2008, Plaintiff indicated the use of medication somewhat helped his condition. [R. 20; *see, e.g.*, R. 231.] Moreover, the ALJ noted Plaintiff did not require any significant emergency room treatment, hospitalization, physical therapy, injections, or surgery as a result of his right shoulder condition. [R. 20.]

Contrary to Plaintiff's contention, the Court finds the ALJ adequately explained his reasoning for discounting portions of Dr. Rathbun's opinion and properly evaluated Dr. Rathbun's opinion pursuant to 20 C.F.R. § 404.1527. Further, while Plaintiff goes to painstaking effort to summarize Dr. Rathbun's treatment notes and all of his findings [Doc. 11 at 8–10], Plaintiff has failed to direct the Court to any findings by Dr. Rathbun that contradict or refute any of the ALJ's findings or conclusions. Accordingly, the Court concludes the ALJ's decision to accord Dr. Rathbun's opinion limited weight is adequately explained, and Plaintiff's argument to the contrary is unpersuasive.[11]

**RFC Assessment**

Plaintiff contends that, in assessing Plaintiff's RFC, the ALJ failed to apply mandatory analytical tests in rejecting a prior RFC finding and failed to comply with SSR 96-8p. [Doc. 11 at 15–19; Doc. 13 at 9–11.] Specifically, Plaintiff argues the ALJ erred by failing to explain why he was abandoning the 2004 finding that Plaintiff must refrain from

---

[11] Plaintiff also argues the ALJ used the opinion of state nonexamining physician Dr. Williams for the purpose of limiting Plaintiff's orthopaedic problems but rejected his conclusions that were consistent with Dr. Rathbun's opinions. [Doc. 11 at 23.] The ALJ explained he considered the RFC conclusions of the state's nonexamining physicians and found that, while they do not as a general matter deserve as much weight as those of examining or treating physicians, these opinions deserved some weight because portions of the opinions were supported by objective medical evidence of record. [R. 19.] However, the ALJ found those limitations consistent with Dr. Rathbun's to be unsupported by the weight of the evidence of record, including Plaintiff's treatment history, findings upon examination, and activities of daily living. [*Id.*] Based on the above, the Court finds the ALJ provided adequate explanation of his weighing of these opinions.

kneeling and balancing because Social Security Acquiescence Ruling 00-1(4); *Albright v. SSA*, 174 F.3d 473 (4th Cir. 1999); and *Lively v. Secretary of HHS*, 820 F.2d 1391 (4th Cir. 1987), all require the ALJ to explain in detail why he found Plaintiff had a different RFC from one found in a prior case.  [Doc. 13. at 15.]  Plaintiff also contends the ALJ was required to summarize Dr. Rathbun's treatment notes to comply with SSR 96-8p.  [*Id.* at 16.]  As explained below, the Court finds Plaintiff's arguments are meritless.

### *Consideration of 2004 RFC Findings*

In explaining why he abandoned the 2004 finding that Plaintiff must refrain from kneeling and balancing, the ALJ stated,

> Pursuant to <u>Albright v. SSA</u>, 174 F.3d 473 (4th Cir. 1999), <u>Lively v. Sec. of HHS</u>, 820 F.2d 1391 (4th Cir. 1987), and Acquiescence Ruling 00-1(4), the undersigned has considered the prior findings of the Administrative Law Judge in the previous decision dated September 19, 2004, and has given such findings appropriate weight in light of all the relevant facts and circumstances.  In determining this weight, the undersigned has considered factors such as: whether a fact upon which the prior finding was based was subject to change with the passage of time, such as a fact relating to the severity of the claimant's medical condition; the likelihood of such change, considering the length of time that has elapsed between the previously adjudicated period and the period adjudicated in this subsequent claim; and the extent that the evidence not considered in the previous final decision provides a basis for making a different finding with respect to the period being adjudicated in the subsequent claim.  The undersigned accords the prior findings in the September 19, 2004, some limited weight as the evidence indicates that the claimant was limited to light work generally as a result of his degenerative disc disease and degenerative joint disease with the avoidance of pulmonary irritants due to his chronic obstructive pulmonary disease and history of lung cancer.  Nevertheless, due to the claimant's treatment history, findings upon examination, and activities of daily living, the undersigned finds that restrictions from kneeling and balancing are no longer warranted.  Thus, these additional restrictions are accorded limited weight.

[R. 19.] Specifically with respect to limitations related to kneeling and balancing, the ALJ found treatment notes supported Plaintiff's ability to stand, walk, and move about well within normal limits but that a November 2006 x-ray revealed moderate degenerative changes. [R. 20.] Therefore, a limitation to light work with no more than occasional crouching and stooping was warranted. [*Id.*] Further, the ALJ noted a November 2006 x-ray showed degenerative changes in Plaintiff's right shoulder with a fracture in the glenohumeral fossa. [*Id.*] Thus, the ALJ found the limitation to light work with no climbing or crawling and no more than occasional overhead reaching was warranted. [*Id.*] Based on the above, the Court concludes the ALJ adequately explained his decision to exclude from his 2009 RFC assessment the kneeling and balancing limitations contained in the 2004 decision.[12]

### *Summary of Dr. Rathbun's Treatment Notes*

As stated above, Plaintiff contends that, in determining Plaintiff's RFC, the ALJ was required to summarize Dr. Rathbun's treatment notes to comply with SSR 96-8p. SSR 96-8p provides in relevant part,

> When an individual is not engaging in substantial gainful activity and a determination or decision cannot be made on the basis of medical factors alone (i.e., when the impairment is severe because it has more than a minimal effect on the ability to do basic work activities yet does not meet or equal in severity the requirements of any impairment in the Listing of

---

[12] Plaintiff also contends the ALJ failed to mention that he was omitting the 2004 limitation that Plaintiff required a sit/stand option. [Doc. 11 at 15–16.] However, Plaintiff argues only that the ALJ failed to adequately explain why he rejected the 2004 limitations; Plaintiff does not argue that these limitations were still applicable. [*See* Doc. 11 at 15–19.] Therefore, the Court has limited its analysis to whether the ALJ adequately explained his decision to reject the 2004 findings, and with respect to the 2004 limitation of a sit/stand option, as explained below, the Court finds the ALJ's RFC assessment is supported by substantial evidence such that any error resulting from the ALJ's failure to mention the sit/stand limitation from the 2004 decision is harmless error.

> Impairments), the sequential evaluation process generally must continue with an identification of the individual's functional limitations and restrictions and an assessment of his or her remaining capacities for work-related activities. . . . The Act requires that an individual's inability to work must result from the individual's physical or mental impairment(s). Therefore, in assessing RFC, the adjudicator must consider only limitations and restrictions attributable to medically determinable impairments.

SSR 96-8p, 61 Fed. Reg. 34,474-01, at 34,475–76 (July 2, 1996).  The RFC assessment must be based on all of the relevant evidence in the case record, including but not limited to, medical history, medical signs and lab findings, effects of treatment, reports of daily activities, recorded observations, medical source statements, and effects of symptoms reasonably attributed to a medically determinable impairment.  *Id.* at 34,477.  Nowhere in SSR 96-8p or the regulations is there a requirement that the ALJ fully summarize the findings of  a treating physician.  Accordingly, the Court concludes Plaintiff's argument is without merit.

**Symptoms Analysis**

Plaintiff contends that, in evaluating Plaintiff's symptoms, the ALJ (a) failed to state which of Plaintiff's symptoms could reasonably be caused by his medically determinable impairments and (b) improperly rejected Plaintiff's testimony.  [Doc. 11 at 19–22; Doc. 13 at 11–13.]  Specifically, Plaintiff argues the ALJ's failure to state which of Plaintiff's symptoms could reasonably be caused by his medically determinable impairments was prejudicial error because without this statement, it is unclear which symptoms could be proven by testimony alone.  [Doc. 11 at 19–20.]  Further, Plaintiff argues the ALJ's reasoning for discounting Plaintiff's credibility is circular:

> The ALJ first states that the plaintiff is not credible because "the claimant was treated on an infrequent basis and findings upon examination are inconsistent with his level of pain generally." T-17. However, the ALJ has already found that the plaintiff has a medically determinable impairment which could reasonably be expected to cause the vague "some of" the alleged symptoms. Therefore, the ALJ has engaged in circular reasoning. If the plaintiff has a condition which could reasonably cause his non-exertional symptoms such as fatigue, shortness of breath and pain, then the ALJ cannot reject them simply on the basis of medical records.

[*Id.* at 20.] Plaintiff also argues there was no attempt to comply with the test of SSR 82-59 concerning failure to follow medical advice. [*Id.* at 20–21.] Moreover, Plaintiff argues SSR 96-7p requires that, in evaluating credibility, the ALJ must discuss side effects of medication. [*Id.* at 21.] Finally, Plaintiff argues that, although the ALJ cited activities of daily living in discounting Plaintiff's credibility, there was absolutely no testimony at the hearing about Plaintiff's activities of daily living, and the Fourth Circuit has held that selective citing of activities of daily living cannot be used to contradict nonexertional limitations. [*Id.* at 21–22.] For the reasons stated below, the Court disagrees the ALJ's symptoms analysis is in error.

### *ALJ's Analysis With Respect to the Cause of Plaintiff's Symptoms*

As outlined above, the Fourth Circuit has explained the Social Security regulations enunciate a two-part test for evaluating the effect of a claimant's symptoms on the disability determination. *See Morgan*, 142 F. App'x at 723 (citations omitted). The Fourth Circuit has also emphasized that

> for pain to be found to be disabling, there *must* be shown a medically determinable impairment which could reasonably be expected to cause not just pain, or some pain, or pain of some kind or severity, but *the pain the claimant alleges she suffers*.

37

> The regulation thus requires at the threshold a showing by objective evidence of the existence of a medical impairment "which could reasonably be expected to produce" the actual pain, in the amount and degree, alleged by the claimant.

*Craig*, 76 F.3d at 594 (emphasis in original).  The court continued,

> It is only *after* a claimant has met her threshold obligation of showing by objective medical evidence a medical impairment reasonably likely to cause the pain claimed, that the intensity and persistence of the claimant's pain, and the extent to which it affects her ability to work, must be evaluated.  *See* 20 C.F.R. §§ 416.929(c)(1) & 404.1529(c)(1).  Under the regulations, this evaluation must take into account not only the claimant's statements about her pain, but also "all the available evidence," including the claimant's medical history, medical signs, and laboratory findings, *see id.*; any objective medical evidence of pain (such as evidence of reduced joint motion, muscle spasms, deteriorating tissues, redness, etc.), *see* 20 C.F.R. §§ 416.929(c)(2) & 404.1529(c)(2); and any other evidence relevant to the severity of the impairment, such as evidence of the claimant's daily activities, specific descriptions of the pain, and any medical treatment taken to alleviate it, *see* 20 C.F.R. §§ 416.929(c)(3) & 404.1529(c)(3).

*Id.* at 595 (emphasis in original).[13]

Here, the ALJ determined Plaintiff's medically determinable impairments could reasonably be expected to cause some of Plaintiff's alleged symptoms but that Plaintiff's

---

[13] SSR 96-7p further explains,

> It is not sufficient for the adjudicator to make a single, conclusory statement that "the individual's allegations have been considered" or that "the allegations are (or are not) credible." It is also not enough for the adjudicator simply to recite the factors that are described in the regulations for evaluating symptoms. The determination or decision must contain specific reasons for the finding on credibility, supported by the evidence in the case record, and must be sufficiently specific to make clear to the individual and to any subsequent reviewers the weight the adjudicator gave to the individual's statements and the reasons for that weight.

SSR 96-7p, 61 Fed. Reg. at 34,484.  As explained below, the Court concludes the ALJ, in finding Plaintiff's allegations were to an extent not credible, fulfilled the requirement outlined in SSR 96-7p by relating particular evidence that detracted from Plaintiff's credibility.  [*See* R. 17–18.]

statements concerning the intensity, persistence, and limiting effects of his symptoms were not credible to the extent Plaintiff claimed he was more limited than reflected in the ALJ's RFC assessment. [R. 17.] The ALJ went on to detail what particular evidence undermined Plaintiff's statements with respect to the limiting effects of his symptoms; the ALJ considered evidence with respect to Plaintiff's lung cancer, chronic obstructive pulmonary disease, medication, and activities of daily living. [R. 17–18.] Upon review of the record, the Court concludes the ALJ's decision is consistent with the Fourth Circuit's guidance in *Craig*, and therefore, the Court finds Plaintiff's argument that the ALJ erred by failing to state which of Plaintiff's symptoms could reasonably be caused by his medically determinable impairments is without merit.

### *ALJ's Reasoning With Respect to Plaintiff's Credibility*

Plaintiff takes issue with the ALJ's reasons for discounting Plaintiff's credibility, arguing that "[i]f the plaintiff has a condition which could reasonably cause his non-exertional symptoms such as fatigue, shortness of breath and pain, then the ALJ cannot reject them simply on the basis of medical records." [*Id.* at 20.] As explained above,

> Under the regulations, [the ALJ's] evaluation [of the intensity, persistence, and limiting effects of the claimant's pain] must take into account not only the claimant's statements about her pain, but also "all the available evidence," including the claimant's medical history, medical signs, and laboratory findings, *see id.*; any objective medical evidence of pain (such as evidence of reduced joint motion, muscle spasms, deteriorating tissues, redness, etc.), *see* 20 C.F.R. §§ 416.929(c)(2) & 404.1529(c)(2); and any other evidence relevant to the severity of the impairment, such as evidence of the claimant's daily activities, specific descriptions of the pain,

and any medical treatment taken to alleviate it, *see* 20 C.F.R. §§ 416.929(c)(3) & 404.1529(c)(3).

*Craig*, 76 F.3d at 595. Also as previously stated, the ALJ considered Plaintiff's statements concerning his pain and the record evidence to determine Plaintiff's complaints of pain were not entirely credible. [R. 17–18.] The ALJ's analysis was in line with the requirements of the Administration and the Fourth Circuit; accordingly, the Court concludes Plaintiff's argument that the ALJ erroneously relied only on medical evidence to determine Plaintiff's RFC is without merit.[14]

---

[14] Plaintiff appears to argue that, if the ALJ determined Plaintiff had a medically determinable impairment that could reasonably produce Plaintiff's alleged symptoms, the ALJ was required to incorporate the limitations Plaintiff alleged were due to the symptoms. [*See* Doc. 11 at 19–20.] Plaintiff relies on *Hines v. Barnhart*, 453 F.3d 559 (4th Cir. 2006), and includes the following quote from that case:

> Having met his threshold obligation of showing by objective medical evidence a condition reasonably likely to cause the pain claimed, Mr. Hines was entitled to rely exclusively on subjective evidence to prove the second part of the test, i.e., that his pain is so continuous and/or so severe that it prevents him from working a full eight hour day.

[Doc. 11 at 20 (quoting *Hines*, 453 F.3d at 565).] However, Plaintiff omits the footnote that appears in the quoted sentence (and fails to indicate in his citation that he has omitted the footnote); the footnote states,

> "While objective evidence is not mandatory at the second step of the test, [t]his is not to say, however, that objective medical evidence and other objective evidence are not crucial to evaluating the intensity and persistence of a claimant's pain and the extent to which it impairs her ability to work. They most certainly are. Although a claimant's allegations about her pain may not be discredited solely because they are not substantiated by objective evidence of the pain itself or its severity, they need not be accepted to the extent they are inconsistent with the available evidence, including objective evidence of the underlying impairment, and the extent to which that impairment can reasonably be expected to cause the pain the claimant alleges she suffers."

*Hines*, 453 F.3d at 565 n.3 (quoting *Craig*, 76 F.3d at 595). As the Court has explained, and as the case cited by Plaintiff makes clear, the ALJ was not required to fully credit Plaintiff's allegations with respect to his symptoms; the ALJ correctly evaluated and appropriately discredited Plaintiff's allegations in light of the record evidence. Consequently, as previously stated, the Court finds Plaintiff's argument is without merit.

### *ALJ's Analysis With Respect to Plaintiff's Failure to Stop Smoking*

Plaintiff contends that, in finding Plaintiff did not comply with medically prescribed treatment, the ALJ failed to properly consider the factors outlined in SSR 82-59.  The Policy Statement of SSR 82–59 provides,

> An individual who would otherwise be found to be under a disability, but who fails without justifiable cause to follow treatment prescribed by a treating source which the Social Security Administration (SSA) determines can be expected to restore the individual's ability to work, cannot by virtue of such "failure" be found to be under a disability.

SSR 82-59, 1982 WL 31384, at *1 (1982).   Here, the ALJ stated with respect to Plaintiff's failure to quit smoking:  "[D]espite his chronic obstructive pulmonary disease, history of lung disease, and doctors' orders, [Plaintiff] has admitted that he continued to smoke 1 ½ packs of cigarettes daily.  Such treatment noncompliance weakens [Plaintiff's] credibility regarding the nature and extent of his lung condition."  [R. 18.]  From the ALJ's decision, there is no indication the ALJ would have found Plaintiff disabled but for his noncompliance with doctors' orders to quit smoking; rather, the ALJ considered Plaintiff's noncompliance as one factor that weakened Plaintiff's credibility about the extent to which he was limited by his symptoms.  Plaintiff has failed to demonstrate the ALJ relied on noncompliance as the basis for finding Plaintiff not disabled and, therefore, has failed to demonstrate the ALJ violated SSR 82–59.  *See Copper v. Astrue*, No. PWG–08–2621, 2010 WL 3294691, *3 (D. Md. Aug.19, 2010) (unpublished opinion) ("SSR 82-59 only applies where the ALJ has determined that an individual's impairments preclude him or her from engaging in substantial gainful activity, i .e., an individual who would otherwise be found disabled under the Act.  That is not the case here.  Rather, the ALJ only discussed non-compliance when

41

assessing Claimant's credibility, as ALJ's are directed to do pursuant to SSR 96-7p." (internal citation omitted)); *cf. Ibarra v. Comm'r of Soc. Sec. Admin.*, 92 F. Supp. 2d 1084, 1087 (D. Or. 2000) ("The ALJ did not expressly purport to deny claimant benefits on the ground that she failed to follow prescribed treatment, but his comments . . . and his ultimate finding that claimant is not disabled rest, in significant part, on his expressed perception that her failure to follow a prescribed treatment caused her condition to be worse than it might otherwise be.   Consequently, SSR 82–59, which sets forth the Commissioner's required criteria for a finding of failure to follow prescribed treatment when evaluating disability, appears to govern this case." (internal citation omitted)). Consequently, the Court concludes Plaintiff's argument is meritless.

### ALJ's Analysis With Respect to Plaintiff's Medications

Plaintiff contends SSR 96-7p required the ALJ to discuss the side effects of Plaintiff's medications.   Social Security Ruling 96-7p provides,

> In recognition of the fact that an individual's symptoms can sometimes suggest a greater level of severity of impairment than can be shown by the objective medical evidence alone, 20 CFR 404.1529(c) and 416.929(c) describe the kinds of evidence, including the factors below, that the adjudicator must consider in addition to the objective medical evidence when assessing the credibility of an individual's statements:
> . . .
>
> 4. The type, dosage, effectiveness, and side effects of any medication the individual takes or has taken to alleviate pain or other symptoms . . . .

SSR 96-7p, 61 Fed. Reg. at 34,485.   While Plaintiff states that "[t]he records note side effects of medication," and correctly notes the ALJ did not discuss the side effects of

Plaintiff's medication,[15] Plaintiff has failed to demonstrate how his medication impacted his ability to perform light work such that the ALJ's RFC assessment was in error.  In other words, Plaintiff has failed to argue or direct the Court to any evidence in the record demonstrating the ALJ's credibility determination is not supported by substantial evidence.[16]  As discussed above, the Court has concluded the ALJ properly evaluated Plaintiff's credibility, and therefore, the Court finds the ALJ's failure to discuss the side effects of Plaintiff's medication in accordance with SSR 96-7p is harmless error.  *See, e.g.*, *Perdue v. Astrue*, 2011 WL 6415490, at *17 (S.D.W. Va. Dec. 21, 2011) ("[C]ourts have applied a harmless error analysis to administrative decisions that do not fully comport with the procedural requirements of the agency's regulations, but for which remand would be merely a waste of time and money.  In general, remand of a procedurally deficient decision is not necessary absent a showing that the [complainant] has been prejudiced on the merits or deprived of substantial rights because of the agency's procedural lapses . . . [, which] constitute a basis for remand only if such improprieties would cast into doubt the existence of substantial evidence to support the ALJ's decision." (internal quotation marks and citation omitted)); *see also Ngarurih v. Ashcroft*, 371 F.3d 182, 190 n.8 (4th Cir. 2004) ("While the general rule is that an administrative order cannot be upheld unless the grounds upon which the agency acted in exercising its powers were those upon which its

---

[15] However, the ALJ did implicitly note Plaintiff took narcotic pain medication; the ALJ stated Plaintiff "did not regularly take narcotic-based pain relieving medications in spite of his allegations of quite limiting pain." [R. 18.] The ALJ also discussed how Plaintiff's medications improved his condition.  [R. 20.]  Therefore, the Court notes the ALJ did to some extent take into account the effects of Plaintiff's medications.

[16] In his brief, Plaintiff states he could not continue taking prescribed narcotic pain medication because of its side effects.  [Doc. 11 at 18.]  However, Plaintiff has failed to direct the Court to evidence in the administrative record documenting this fact.

action can be sustained, reversal is not required where the alleged error clearly had no bearing on the procedure used or the substance of the decision reached." (internal quotation marks and citation omitted)).

### *ALJ's Analysis With Respect to Plaintiff's Activities of Daily Living*

As with his other arguments with respect to the ALJ's credibility determination, Plaintiff appears to argue the ALJ must credit Plaintiff's testimony regarding his symptoms, even in the face of evidence, such as activities of daily living, demonstrating Plaintiff is not so limited as his testimony suggests. [*See* Doc. 11 at 21–22.] However, as the Court has repeated throughout this section of its analysis,

> Under the regulations, [the ALJ's] evaluation [of the intensity, persistence, and limiting effects of the claimant's pain] must take into account not only the claimant's statements about her pain, but also "all the available evidence," including the claimant's medical history, medical signs, and laboratory findings, *see id.*; any objective medical evidence of pain (such as evidence of reduced joint motion, muscle spasms, deteriorating tissues, redness, etc.), *see* 20 C.F.R. §§ 416.929(c)(2) & 404.1529(c)(2); and any other evidence relevant to the severity of the impairment, such as evidence of the claimant's daily activities, specific descriptions of the pain, and any medical treatment taken to alleviate it, *see* 20 C.F.R. §§ 416.929(c)(3) & 404.1529(c)(3).

*Craig*, 76 F.3d at 595.

Here, the ALJ stated Plaintiff's activities of daily living were consistent with the ALJ's RFC assessment but inconsistent with Plaintiff's allegations regarding his limitations. [R. 18.] Specifically, the ALJ noted Plaintiff performed contracting work when he was able, cared for his own activities of daily living, and had dropped a motorbike on his ankle, which suggested Plaintiff could perform a greater level of activity than he alleged. [*Id.*] Plaintiff

does not argue the ALJ incorrectly stated his activities of daily living, and Plaintiff has failed

to point out any evidence that contradicts the ALJ's statement of Plaintiff's activities of daily

living.[17]  Consequently, as the Court has previously stated, the Court concludes the ALJ

properly evaluated Plaintiff's credibility and that Plaintiff's argument is without merit.

## CONCLUSION AND RECOMMENDATION

Wherefore, based on the foregoing, the Court concludes the ALJ's decision is

supported by substantial evidence and recommends that the decision of the Commissioner

be AFFIRMED.  Additionally, it is recommended that Plaintiff's motion to admit additional

evidence be DENIED.

IT IS SO RECOMMENDED.

s/Jacquelyn D. Austin
United States Magistrate Judge

February 2, 2012
Greenville, South Carolina

---

[17] Plaintiff states, "Interestingly, although the ALJ cited activities of daily living, there was absolutely no testimony at the hearing about the activities of daily living."  [R. 22.]  However, Plaintiff has failed to cite any authority indicating activities of daily living must be discussed at the hearing before the ALJ, and Plaintiff does not dispute the record before the ALJ contained evidence of Plaintiff's activities of daily living or that Plaintiff's activities of daily living were different from those cited by the ALJ.  Accordingly, the Court fails to see the significance of Plaintiff's statement that Plaintiff's activities of daily living were not discussed at the hearing.